February 26, 1999

No. 2--98--0475

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

SAM FANTINO and LORRIE        ) Appeal from the Circuit Court

FANTINO,             ) of Kane County.

                              )

Plaintiffs-Appellees,    ) No. 94--L--0787

                              )

v.                            )          

                              ) 

LENDERS TITLE AND GUARANTY    ) Honorable                  

COMPANY,                      ) Timothy Q. Sheldon,

                              ) Judge, Presiding.

     Defendant-Appellant.     )

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Lenders Title & Guaranty Company, appeals from the trial court’s judgment in favor of plaintiffs and its subsequent denial of defendant’s motion to reconsider.  We reverse.   

On January 11, 1990, plaintiffs, Sam and Lorrie Fantino (the Fantinos), entered into a contract with Miles Ross and Associates, Inc. (MRA), for the construction of a house.  Financing was provided through First Financial Bank F.S.B. (First Financial).  On February 3, 1990, the Fantinos and MRA executed a document entitled "Instructions to General Contractor and Borrower for Construction Escrows and Draws" (Instructions).  Defendant did not execute this document, nor was it a party to the document.  On March 29, 1990, the Fantinos and First Financial executed the "Construction Loan Agreement."  Paul Seligman, vice-president and partial owner of defendant, signed the document only as a witness, not as a party to the document.  However, the Fantinos, First Financial, and Seligman for defendant executed a document on the same date wherein defendant was to set up an escrow account to pay funds deposited by the Fantinos and First Financial to the general contractor (Escrow Agreement).  Construction was to begin on March 31, 1990, and be completed by November 1, 1990.

Three disbursements totaling $302,738.49 were made by defendant to MRA through September 20, 1990.  Soon after, several subcontractor lien claims were filed.  The house received an occupancy permit on November 1, the date called for in the contract.  However, much work remained to be done on the house.  On November 26, defendant notified MRA that it could not fund the request for the final draw, as the escrow account contained $12,791.95 less than the contractor’s statement requested and proper paperwork had not been filed.  Furthermore, subcontractor and materialmen liens continued to be filed.  The Fantinos eventually fired MRA and hired other contractors to finish construction and to repair MRA’s faulty work.  The lienholders brought suit against the Fantinos and eventually settled for the approximately $97,000 that remained in escrow.  The Fantinos brought a claim against MRA pursuant to an arbitration provision in their contract with MRA; the parties do not tell the outcome.  Randy Forrest, the owner of MRA, was charged criminally in the matter and convicted of forgery; restitution of $14,000 to the Fantinos was part of his sentence.

The Fantinos also filed a two-count complaint against defendant for breach of contract and breach of fiduciary duty.  Defendant filed a counterclaim seeking attorney fees incurred in the subcontractor litigation.  The case proceeded to a bench trial, wherein the court denied defendant’s counterclaim but entered judgment for the Fantinos and against defendant in the amount of $129,780, plus fees and costs.  The court subsequently denied defendant’s motion to reconsider.  This appeal followed.

A reviewing court should not overturn a trial court’s findings merely because it disagrees with the lower court or because it might have reached a different conclusion if it had been the trier of fact.  
Bazydlo v. Volant, 
164 Ill. 2d 207, 214 (1995).  Because a trial court is in a better position to observe witnesses testifying and to determine the weight and credibility to give such testimony, a trial court’s findings will not be disturbed on review unless they are against the manifest weight of the evidence.  
Bazydlo, 
164 Ill. 2d 214-15.  A judgment is against the manifest weight of the evidence only when the opposite conclusion is apparent or when findings appear to be arbitrary, unreasonable, or not based on the evidence.  
Bazydlo, 
164 Ill. 2d at 215.

Defendant first contends that the court erred in finding that defendant breached a contract with the Fantinos.  We agree.

The Fantinos alleged that defendant breached its duties and obligations under the Instructions document executed on February 3, 1990.  According to the Fantinos, defendant breached this contract by disbursing funds from the escrow account (1) without properly executed lien waivers; (2) to individuals not listed on the contractor's sworn statement; (3) for materials not provided for on the sworn statement; and (4) in amounts in excess of the amounts provided for on the sworn statement.  The
 Fantinos also alleged that defendant failed to obtain written authorization from the Fantinos prior to disbursing funds and failed to inspect the premises to verify that work for which payment was requested was in fact performed in a workmanlike manner.  All these alleged breaches arose under the Instructions document, which was the only contract attached to the complaint.

However, defendant was not a party to the Instructions.  Only the Fantinos and MRA signed the document.  And while this document refers to the fact that "draws will be handled by a title company representing First Financial" and lists standard items that would be required before a draw could be made, defendant was not a party to the document.  While the Fantinos, MRA, and First Financial, who generated the document, agreed to these terms for draws from the escrow account, defendant did not.  Defendant signed a separate Escrow Agreement, to which the Fantinos and First Financial were also parties.  This agreement set forth separate conditions for disbursements from the escrow account.  However, the Fantinos did not attach this agreement to their complaint or allege breaches of it.  No direct contractual relationship between the Fantinos and defendant exists as to the Instructions.

The court, however, found that the Fantinos were third-party beneficiaries of the Escrow Agreement, which was executed by the Fantinos, First Financial, and defendant.  The trial court stated the Escrow Agreement was an agency agreement between defendant and First Financial which "resulted in the Plaintiffs***becoming Third Party Beneficiaries."

Only when parties intentionally enter into a contract for the direct benefit of a third party may that third party, 
who is not a party to the contract, 
enforce any rights arising out of that contract.  
People ex rel. Skinner v. Graham, 
170 Ill. App. 3d 417, 439 (1988).  The promissor’s intent must be shown by an 
express provision 
in the contract identifying the third-party beneficiary.  
Skinner, 
170 Ill. App. 3d at 439.

The Fantinos were parties to the Escrow Agreement.  By definition, they cannot be third-party beneficiaries of an agreement to which they are parties.  Furthermore, the Escrow Agreement does not contain any express provision identifying the Fantinos as beneficiaries.  To the contrary, the Agreement is replete with provisions that defendant may enter the construction premises to conduct investigations "on behalf of the lender" and that such investigations "are for the direct benefit of the lender only."  The Fantinos agreed "that it is not [defendant’s] obligation" to make any assurances regarding quality of workmanship and materials and that defendant had no liability to the Fantinos for defects in quality or failure to complete the home in accordance with plans and specifications.  Defendant was also relieved from any liability for disbursing funds and then discovering that the remaining funds were insufficient to complete the construction.  The Fantinos, on the other hand, agreed to reimburse defendants for expenses incurred in any actions resulting from disputes with reference to the rights of anyone claiming an interest in the escrow funds.  Not only was there no express provision identifying the Fantinos as third-party beneficiaries, but also the agreement specifically limited defendant’s actions to the benefit of First Financial.  The trial court’s findings of contractual relationship between the Fantinos and defendant under the Escrow Agreement, either directly or indirectly as third-party beneficiaries, are against the manifest weight of the evidence and its judgment must be reversed. 

Defendant next contends that the trial court erred in finding that, by becoming an escrow agent through the Escrow Agreement, defendant assumed a fiduciary duty to act according to the terms of the Escrow Agreement and that this fiduciary duty ran to both the Fantinos and First Financial.  The court also found that defendant breached this fiduciary duty by failing to conduct proper inspections, failing to procure proper lien waivers, and failing to procure the Fantinos’ written authorization before releasing funds.

Escrowees have been found to owe a fiduciary duty both to the party making the deposit and the party for whose benefit it is made.  See 
Toro Petroleum Corp. v. Newell, 
33 Ill. App. 3d 223, 228 (1974).  Under this analysis, the escrowee owes a fiduciary duty to act only in accordance with the escrow instructions.  
Toro, 
33 Ill. App. 3d at 228.  In the case before us, the escrow agreement clearly stated in relevant parts that defendant was (1) directed to disburse escrow funds "upon order of the undersigned lender;" (2) "authorized to enter upon the premises to conduct inspections 
on behalf of the lender," 
"for the 
benefit of the lender only" 
(emphasis added); and (3) to secure proper lien waivers for any amounts paid.  It is clear that defendant did not violate any duty owed to the Fantinos by disbursing funds without their 
authorization 
or by failing to conduct inspections on behalf of the Fantinos.  Furthermore, frauds committed by Randy Forrest of MRA in forging signatures on subcontractor liens notwithstanding, the Fantinos did not show in any payment that the lien waiver did not match the amount paid.  The trial court’s finding that defendant violated a fiduciary duty owed to the Fantinos was against the manifest weight of the evidence. Therefore, we must reverse the judgment of the trial court.

Because of our disposition of these issues, we need not address defendant’s contentions regarding damages.

For these reasons, the judgment of the circuit court of Kane County is reversed.

Reversed.

GEIGER and COLWELL, JJ., concur.